

ENTERED
10/03/2017

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| **MONTCO OFFSHORE, INC.,** *et al* | § | **CASE NO: 17-31646** |
| Debtor(s) | § | |
| | § | **CHAPTER  11** |
| | § | |
| **MONTCO OILFIELD CONTRACTORS, LLC** | § | |
| | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 17-3249** |
| | § | |
| **BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC,** *et al* | § | |
| | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

Montco Oilfield Contractors, LLC filed this adversary proceeding against Defendants in order to recover unpaid amounts allegedly owed to Montco for plugging and abandonment services it completed pursuant to a Turnkey Service Agreement, as well as alleged damages associated with performing additional, unanticipated decommissioning work that resulted from undisclosed liabilities.   Montco alleges claims for breach of contract, *quantum meruit*, misrepresentation, and a declaratory judgment against Defendants.

Defendants moved to dismiss Montco's Amended Complaint pursuant to Federal Rules of Civil Procedure 8, 9, and 12.  Defendants' motions to dismiss argue that Montco failed to plead requisite facts under Rules 8 and 9.   If Montco's claims meet the federal pleading standards, Defendants alternatively argue that those claims fail as a matter of law or are barred by Texas law.

Count I of Montco's Amended Complaint is dismissed as to all Defendants.  Count I is dismissed without prejudice upon the satisfaction of the conditions to payment as to Black Elk.

Count II is dismissed as to all Defendants except Black Elk.  Counts III, IV, and VI of Montco's Amended Complaint are dismissed as to all Defendants.  Montco is allowed to replead Count V.

### Background

On August 11, 2015, three creditors filed an involuntary chapter 7 bankruptcy petition against Black Elk Energy Offshore Operations, LLC.  (Case No. 15-34287, ECF No. 1).  Black Elk filed its consent to the Order for Relief and a motion to convert its involuntary chapter 7 case to a voluntary chapter 11 case on August 31, 2015.  (Case No. 15-34287, ECF Nos. 68, 69).  The Court subsequently granted Black Elk's motion.  (Case No. 15-34287, ECF No. 75).

Montco, a Louisiana limited liability company, is a project management, engineering, and oilfield personnel service provider and general contractor.  (ECF No. 33 at 2).  As part of the confirmation of Black Elk's chapter 11 plan, Montco and Black Elk entered into a Turnkey Service Agreement (the "Black Elk Contract"), which the Court subsequently approved.  (Case No. 15-34287, ECF No. 682).

Under the Black Elk Contract, Montco agreed to perform the plugging and abandonment work on Black Elk's offshore oil and gas sites in order to bring those sites into conformance with federal regulations.  (ECF No. 33-2 at 2).  The Black Elk Contract listed specific Jobs that Montco was required to complete.  (ECF No. 33-2 at 21–22).  In exchange for completing these Jobs, Montco would be paid a turn-key price for each obligation it completed, "regardless of the actual fees, costs and expenses incurred."  (ECF No. 33-2 at 3).  Montco would receive payment upon the release of proceeds from surety bonds securing or cash collateral collateralizing Black Elk's plugging and abandonment obligations on its sites.  (ECF No. 33-2 at 3).

Two amendments—dated May 26, 2016, and June 11, 2016—supplemented the Black Elk Contract.  (ECF No. 33-3; ECF No. 33-4).  The first amendment added Jobs 19, 20, and 21

to the list of Jobs to be completed by Montco as part of its responsibilities under the Black Elk Contract.  (ECF No. 33-3 at 3).  The second amendment added Jobs 22, 23, 24, and 25 to the list of Jobs for Montco to complete.  (ECF No. 33-4 at 4).  Both amendments provided a funding mechanism to pay Montco for its services on these additional Jobs.  (ECF No. 33-3 at 4; ECF No. 33-4 at 4–5).

Upon approval of the Black Elk Contract, Montco commenced its plugging and abandonment work on the Black Elk Job sites.  (ECF No. 33 at 17).  Montco's services included: make-safe operations for preparing personnel platforms; the investigation of Job sites for well intervention and well plugging and abandonment spreads in order to abandon all wells; the investigation of Job sites with additional equipment to clean vessels and prepare platforms for decommissioning; the deconstruction of platforms; the extraction of objects from the Gulf of Mexico; the employment of vessels to trawl each site; and the filing of end-of-operations reports with the federal government for site clearance.  (ECF No. 33 at 17).

In the course of performing under the Black Elk Contract, Montco alleges that it encountered undisclosed wells, abandoned equipment, and structures vastly different than those described in the Black Elk Contract, Defendants' disclosures during contract negotiations, and government or publicly available records.  (ECF No. 33 at 6–7).  These liabilities consequently required Montco to perform substantial amounts of unanticipated work in order for Black Elk's Job sites to be lawfully decommissioned.  (ECF No. 33 at 6).  Montco allegedly notified the Defendants of these unanticipated liabilities and resulting work through daily reports and summaries.  (ECF No. 33 at 7).  None of the Defendants purportedly objected to Montco completing this unanticipated work.  Defendants refuse to pay Montco for this work.  (ECF No. 33 at 7).

Montco also claims that it identified and undertook work on various Black Elk Job sites to manage uncontrolled well flows, as well as the cleaning and disposal of natural and human-made hazardous materials and waste.  (ECF No. 33 at 6).  These issues with the Job sites also required Montco to take actions beyond those listed in the Black Elk Contract.  (ECF No. 33 at 6).  These issues were not disclosed to Montco at the time the parties negotiated and executed the Black Elk Contract.  (ECF No. 33 at 6).  However, Montco asserts that Black Elk agreed to indemnify it for such unanticipated work under Sections 7.9.4 and 7.9.8 of the Black Elk Contract because such problems are impossible to predict in advance for purposes of a turn-key contract for plugging and abandonment work.  (ECF No. 33 at 13–14; ECF No. 33-2 at 9–10).

On March 17, 2017, Montco filed its own chapter 11 bankruptcy petition.  (Case No. 17-31646).  On May 18, 2017, Montco filed this adversary proceeding seeking to recover amounts allegedly due to it under the Black Elk Contract, as well as damages associated with its unanticipated work.  (ECF No. 1).  The "Defendants" in Montco's suit include:

- Black Elk, the owner and operator of the oil drilling platforms and oil wells upon which Montco worked.  (ECF No. 33 at 3).

- The Black Elk Trust, the liquidating trust for Black Elk's bankruptcy estate.  (ECF No. 33 at 3).

- Richard S. Schmidt, the Trustee to the Black Elk Trust.  (ECF No. 33 at 3).

- W&T Offshore Inc., an independent oil and natural gas acquisition, exploitation, and exploration company.  (ECF No. 33 at 3).  W&T was a predecessor in title to various Job sites covered by the two amendments to the Black Elk Contract.  (ECF No. 62 at 5).  Under the amendments, W&T expressly agreed to a limited, conditional payment obligation to Montco.  (ECF No. 33-3 at 4; ECF No. 33-4 at 4–5; ECF No. 62 at 5–6).

- McMoRan Oil & Gas LLC, an oil and natural gas exploration, development, and production company.  (ECF No. 33 at 3).  McMoRan Holds a working interest in one Job site covered by the first amendment to the Black Elk Contract.  (ECF No. 62 at 5).  Under the two amendments to the Black Elk Contract, McMoRan

expressly agreed to a limited, conditional payment obligation to Montco.  (ECF No. 33-3 at 4; ECF No. 62 at 5–6).

- Energy XXI GOM, LLC, an owner and operator of oil and gas properties.    (ECF No. 33 at 3).  Montco categorizes Energy XXI as a working interest holder because it co-owns interests in Job sites with Black Elk.  (ECF No. 103 at 3).  Energy XXI's plugging and abandonment obligations with respect to its co-owned sites are secured by surety bonds issued by Westchester Fire Insurance Company, the surety, on behalf of Energy XXI, the principal, in favor of BOEM, the obligee.  (ECF No. 103 at 3).

- Argonaut Insurance Company, a specialty property and casualty insurance, reinsurance, and managed risk solutions company.  (ECF No. 33 at 3).  Argonaut executed performance bonds on behalf of Black Elk and other various obligees to secure performance of plugging and abandonment obligations on Black Elk Job sites.  (ECF No. 103 at 3–4).  The completion of Montco's services on various sites triggers certain payment obligations of Argonaut due to Montco.  (ECF No. 33 at 6).

- Westchester Fire Insurance Company, a fire and casualty insurance company.  (ECF No. 33 at 4).  Westchester executed performance bonds to fund Energy XXI's share of the decommissioning costs on two Black Elk Job sites.  (ECF No. 63 at 2).  Westchester agreed to release its collateral under the two bonds to Montco once Montco completed the decommissioning work on the sites and BOEM released Westchester's bonds.  (ECF No. 63 at 2–3).

- Energy Resources Technology GOM, LLC, an oil and gas exploration, generation, production and development company.  (ECF No. 33 at 4).  Montco categorizes Energy Resources as a working interest party.  (ECF No. 33 at 5).  Pursuant to Section 2 of the of the second amendment, Energy Resources agreed to  pay Montco for its services on two separate Black Elk Job sites within 45 days once these Jobs were completed and Energy Resources received performance reports.  (ECF No. 33-4 at 4; ECF No. 104 at 2–3).

- Fairways Offshore Exploration, Inc., an oil and gas exploration and development company.  (ECF No. 33 at 4).  Montco categorizes Fairways as a working interest party whose interest falls under the Black Elk Contract.  (ECF No. 33 at 5).

- Fieldwood Energy LLC, an oil and gas acquisition and development company.  (ECF No. 33 at 4).  Fieldwood was a co-working interest owner with Black Elk on one Job site covered by the second amendment to the Black Elk Contract.  (ECF No. 33-4 at 4–5; ECF No. 105 at 6–7).  Fieldwood signed the second amendment for the purpose of funding its respective working interest share of the decommissioning work on the Job site; Fieldwood did not assume any other liabilities or obligations beyond payment of the decommissioning work on the site upon which it held a working interest.  (ECF No. 105 at 7).

- JX Nippon Oil Exploration U.S.A. Limited, an oil and gas exploration, development, and production company. (ECF No. 33 at 4). Montco categorizes Nippon as a legacy owner because it previously owned interests in Black Elk Job sites. (ECF No. 103 at 3). Argonaut, among other sureties, executed performance bonds on behalf of Black Elk, the principal, in favor of Nippon, the obligee, to secure performance of plugging and abandonment obligations on the sites previously owned by Nippon. (ECF No. 103 at 3–4).

- Merit Energy Company, L.L.C., a private equity firm specializing in the acquisition, operation, and development of oil and gas properties. (ECF No. 33 at 4). Montco categorizes Merit as a legacy owner of Black Elk Job sites. (ECF No. 33 at 5). Merit is not a signatory party to either amendment to the Black Elk Contract. (ECF No. 62 at 6).

- Maritech Resources, Inc., an acquirer, developer, and producer of oil and gas. (ECF No. 33 at 4). Montco categorizes Maritech as a legacy owner of Black Elk Job sites. (ECF No. 33 at 5).

- Travelers Bond & Specialty Insurance, a commercial property casualty and personal insurance underwriter. (ECF No. 33 at 5). Travelers, as surety, executed a bond covering the plugging and abandonment obligations on a Black Elk Job site. (ECF No. 98 at 4). The bond listed the United States acting through BOEM. (ECF No. 98 at 4).

- The Doe Defendants, purported legacy owners or other parties interested in the wells and Job sites subject to Montco's Amended Complaint. (ECF No. 33 at 5).

W&T, Nippon, Merit, Maritech, and the Doe Defendants are collectively referred to as the "Legacy Owners." McMoRan, Energy XXI, Energy Resources, Fairways, and Fieldwood are collectively referred to as the "Working Interest Parties."

Montco's Amended Complaint asserts six claims against the Defendants; the six claims include:

i. Count I. A breach of Contract claim against Black Elk, Argonaut, and the other signatories to the Black Elk Contract's amendments based upon those Defendants' failure to remit payment to Montco for the work it completed pursuant to the Black Elk Contract. (ECF No. 33 at 24).

ii. Count II. A breach of contract claim against Black Elk and W&T for failure to indemnify Montco under the Black Elk Contract for services performed while

controlling wild or uncontrolled wells, as well as the cleaning and disposing of hazardous materials and waste.  (ECF No. 33 at 25).

iii.     Count III.  A breach of contract claim against all of the Defendants for failing to pay Montco for the extra-contractual work it completed on the Black Elk Job sites.  (ECF No. 33 at 26–27).

iv.     Count IV.  In the alternative, a *quantum meruit* claim against all of the Defendants for accepting the benefits of Montco's unanticipated work but failing to pay Montco for such benefits.  (ECF No. 33 at 28).

v.     Count V.   In the alternative, a misrepresentation claim against all of the Defendants for misrepresentations and omissions of material fact made to Montco during the negotiation and bidding process for the Black Elk Contract regarding the true scope of the work required to plug and abandon the oil wells and structures on the Black Elk Job sites.  (ECF No. 33 at 28).

vi.     Count VI.  A claim for a declaratory judgment of Montco's legal rights and the Defendants' obligations to Montco.  (ECF No. 33 at 29–30).

On August 10, 2017, Montco stipulated to the dismissal of Travelers from the adversary proceeding.  (ECF No. 111).  On August 14, 2017, Montco stipulated to the dismissal of Westchester Fire from the adversary proceeding.  (ECF No. 113).

The remaining Defendants individually and jointly filed motions to dismiss Montco's Amended Complaint, generally arguing that: Montco's Amended Complaint fails to plead the facts and its causes of action with the specificity required by Federal Rules of Civil Procedure 8 and 9(b); Montco cannot state a plausible claim for breach of contract, and its breach of contract claims fail as a matter of law; Montco's *quantum meruit* claim fails because the Black Elk Contract covers all of the services for which Montco seeks payment; Montco cannot state a plausible claim based on third-party beneficiary status; Montco's tort claims are barred by the economic loss doctrine; Montco fails to state a plausible claim for misrepresentation against all of the Defendants; and that Montco's claim for declaratory judgment should be dismissed as duplicative of its breach of contract claims.

On August 15, 2017, Montco filed an Omnibus Brief in Opposition to Defendants' Motions to Dismiss. Montco's brief asserts that: it sufficiently stated its claims for breach of contract against Black Elk, Argonaut, and the Working Interest/Legacy Owners; it sufficiently stated its *quantum meruit* claim because its unanticipated work was not covered by the Black Elk Contract or that its services, the benefits of which the Defendants accepted, are covered by an exception to the express contract doctrine; and that it sufficiently stated its misrepresentation claim against Black Elk and the Legacy Owners because the requisite specificity of facts is present, it reasonably relied on Black Elk and the Legacy Owners' representations, and the economic loss doctrine does not bar the claim. (ECF No. 115 at 23–52).

Montco's Omnibus Brief stipulated to the withdrawal of Count I against all parties except Black Elk and Argonaut without prejudice. (ECF No. 115 at 23 n.4). Montco's Omnibus Brief additionally stipulated to the dismissal of Count V against the Working Interest Parties and Argonaut without prejudice. (ECF No. 115 at 43 n.9).

The Court held a hearing on the Defendants' motions to dismiss on August 21, 2017. During the hearing, the Court stated that Montco is allowed to replead its misrepresentation claim against Defendants as to the additional, unanticipated work it completed pursuant to the Black Elk Contract. (ECF No. 135 at 58). Additionally, the Court limited Montco's indemnity claim to Black Elk based upon the Black Elk Contract. (ECF No. 135 at 64–65). Finally, the Court set a deadline of August 31, 2017, for Montco to file a statement as to what legal capacity it held when it performed its unanticipated work; the Court set a deadline of September 8, 2017, for Defendants to file responses to Montco's statement.

On September 11, 2017, the Court took this matter under advisement.

### Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). This adversary proceeding has been referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).

### Legal Standard

The Court reviews motions under Federal Rule of Civil Procedure 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). However, the Court "will not strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In *Ashcroft v. Iqbal,* the United States Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotations omitted).

Fraud claims must, in addition, meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity

concerning the circumstances of the fraud.  FED. R. CIV. P. 9(b); *see Oppenheimer v. Prudential Sec. Inc.*, 94 F.3d 189, 195 (5th Cir. 1996) (upholding the district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations).  "To plead fraud adequately, the plaintiff must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

## Analysis

### Count I-Failure to Pay Claims

Pursuant to its Amended Complaint, Montco argues that the Black Elk Contract constitutes an enforceable contract between it, Black Elk, and Argonaut.  (ECF No. 33 at 24). Montco alleges that it fully performed its obligations under the Black Elk Contract.  (ECF No. 33 at 24).  Consequently, the sureties for the Jobs that it completed—including Argonaut—were obligated to release collateral in order to compensate Montco for its decommissioning work. (ECF No. 33 at 24).  However, Black Elk and the sureties failed to remit any payment to Montco for the work that it completed pursuant to the Black Elk Contract.  (ECF No. 33 at 24). Accordingly, Montco alleges that Black Elk and Argonaut breached the Black Elk Contract, entitling Montco to damages.  (ECF No. 33 at 24).

As part of its motion to dismiss Montco's Amended Complaint, the Black Elk Trustee argues that Montco's failure to pay allegation against it should be dismissed because all

conditions precedent to Montco's payments have not been met.  (ECF No. 64 at 5).  As stated in Montco's Amended Complaint and pursuant to the Black Elk Contract, Montco agreed to be paid only after any applicable bond associated with a completed Job was fully terminated or canceled in a manner that left the obligor on that bond without residual liability.  (ECF No. 33-2 at 3; ECF No. 33 at 15).  Because the Trustee did not receive the proceeds of such bonds or the cash collateral securing those bonds from the sureties, the Black Elk Trustee claims that Black Elk is not in breach of contract for a failure to pay Montco since all conditions precedent under the Contract's payment structure have not been met.  (ECF No. 64 at 6).

To establish a breach of contract claim under Texas law, a plaintiff must prove that: (i) a valid contract existed between the plaintiff and the defendant; (ii) the plaintiff performed or was excused from doing so; (iii) the defendant breached the contract's terms; and (iv) the plaintiff sustained damages as a result of the defendant's breach.  *West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.).  If a plaintiff is required to perform under a contract before the defendant is obligated to perform, the plaintiff must prove that it satisfied every condition precedent before it may assert a claim for breach of contract against the defendant.  *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010).  "[A] contract may require performance by one party to be subject to the satisfaction of the other party, or a designated third party . . . ."  *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 652–53 (Tex. App.—Houston [14th Dist.] 2004), *opinion supplemented on overruling of reh'g* (Feb. 10, 2005).

As Montco admits, the Trustee has yet to receive the proceeds from the surety bonds securing or cash collateral collateralizing Black Elk's plugging and abandonment obligations on the Job sites at issue.  (ECF No. 33 at 18, 24).  Because Black Elk's obligation to pay Montco for

its services under the Black Elk Contract is conditioned upon the release of such funds by the sureties, and because no such release has occurred, every contractual condition for Montco's payment from Black Elk has not been satisfied.  Consequently, Black Elk is currently excused from its obligation to pay Montco under the Black Elk contract.  Count I of Montco's Amended Complaint is dismissed as to Black Elk without prejudice upon the satisfaction of the conditions to payment.

Argonaut asserts two defenses to Montco's failure to pay claims brought against it.  First, Argonaut claims that Montco's Amended Complaint fails to state a plausible breach of contract claim against it because Argonaut is not a party to the Black Elk Contract.  (ECF No. 106 at 7–9).  Second, even assuming that Argonaut is obligated to Montco in some way under the Black Elk Contract, Montco's failure to pay claim fails as to Argonaut because Montco's Amended Complaint does not allege any basis for release of the surety amounts under Argonaut's control.  (ECF No. 106 at 9–12).  Consequently, Montco holds no recourse against Argonaut for breach of contract based upon its failure to pay Montco surety bond proceeds.

As stated above, a plaintiff must prove that a valid contract existed between the plaintiff and the defendant in order to establish a breach of contract claim under Texas law.  *West*, 264 S.W.3d at 446.  "[A] valid contract requires an "offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration."  *In re Online Travel Co.*, 953 F.Supp.2d 713, 718 (N.D. Tex. 2013).  In contract actions, privity of contract is an essential element of recovery.  *Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp. 2d 561, 574 (S.D. Tex. 2012), *aff'd sub nom. Kiper v. BAC Home Loans Servicing, L.P.*, 534 F. App'x 266 (5th Cir. 2013).

Under Texas law, the interpretation of an unambiguous contract is a legal question reviewed de novo. *WBCMT 2007 C33 OFFICE 9720, L.L.C. v. NNN Realty Advisors, Inc.*, 844 F.3d 473, 477–78 (5th Cir. 2016). "The primary concern of contract interpretation under Texas law is to ascertain the true intentions of the parties as expressed in the instrument." *Weeks Marine, Inc. v. Standard Concrete Prods., Inc.*, 737 F.3d 365, 369 (5th Cir. 2013). Texas courts thus "examine the entire contract in an effort to harmonize and give effect to all provisions so that none is rendered meaningless." *Id.* Facts and circumstances surrounding the execution of a contract may be considered as an aid when interpreting a contract's provisions. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 731 (Tex. 1981).

Here, only Black Elk and Montco signed the Black Elk Contract. (ECF No. 33-2 at 18–20). Additionally, the Black Elk Contract specifically lists in its preamble that the Contract was made and entered into only by Black Elk and Montco. (ECF No. 33-2 at 2). Finally, Argonaut did not sign nor enter into either of the amendments to the Black Elk Contract. (ECF No. 33-3 at 3, 6; ECF No. 33-4 at 3, 6). Based upon these characteristics of the Black Elk Contract and its amendments, Montco's allegations asserting that Argonaut was in privity of contract with Montco under the Black Elk Contract and thus in breach of the Contract for failure to pay Montco for its services appear wrong on their face.

Montco does allege that "certain Sureties" or their representatives participated in the negotiation of the Black Elk Contract with Montco as part of Black Elk's plan confirmation process, that such parties held a stake in the successful completion of Montco's services under the Contract, and that no such parties objected to the approval of the Black Elk Contract. (ECF No. 33 at 6). Consequently, Montco claims that the circumstances surrounding the execution of the Contract establish that a contract existed between Argonaut and Montco, and that Argonaut

breached this Contract based upon its failure to pay Montco after Montco completed the required services.  (ECF No. 115 at 23).

Montco's allegations, when taken as true, nevertheless fail to state a plausible claim for relief.  Argonaut is not a contracting party to the Black Elk Contract or its amendments and thus is not in privity of contract with Montco.  Instead, Argonaut's obligation to release the surety bond proceeds within its possession to ultimately allow Black Elk to compensate Montco for its decommissioning services arose outside of the Black Elk Contract.  Consequently, regardless of the lack of objections during the negotiation process for the Black Elk Contract, no privity exists between Montco and Argonaut under the Black Elk Contract.  Montco's Amended Complaint fails to plead a plausible claim for relief necessary to survive Argonaut's motion to dismiss Count I.

Montco failed to plead any form of relief upon which to base a claim for a breach of an oral contract or promissory estoppel against Defendants.  Accordingly, Montco cannot recover from Black Elk, Argonaut, or any other Defendant for a failure to pay Montco for its completed services under the Black Elk Contract based upon these theories.

### *Count II-Indemnity Claim*

Under Count II of its Amended Complaint, Montco argues that Black Elk breached its contractual obligations under the Black Elk Contract by failing to indemnify Montco for services it performed to control wild wells, blowouts, and uncontrolled flows on a Black Elk Job site.  (ECF No. 33 at 25).  These services, in Montco's view, were required to effectively service each Black Elk Job site and achieve site clearance.  (ECF No. 33 at 14).  In addition, Montco asserts that Black Elk and W&T breached their contractual obligations to Montco by failing to indemnify Montco for the cleaning and disposing of hazardous materials and waste and naturally

occurring radioactive materials.  (ECF No. 33 at 25).  Together, these alleged breaches resulted in millions of dollars in damages to Montco.  (ECF No. 33 at 25).

The Black Elk Trustee's motion to dismiss argues that Montco's right to seek additional payment from the Trustee was already litigated in connection with the confirmation of Black Elk's chapter 11 plan, thus barring Montco's claims under collateral estoppel.  (ECF No. 64 at 6–7).  During Black Elk's chapter 11 plan confirmation process, the Black Elk Contract drew several objections from parties in interest to Black Elk's bankruptcy case regarding two issues: whether the Contract was a true turn-key agreement and pricing uncertainty for various Jobs under the Contract.  (ECF No. 64 at 7).  In order to overcome such objections, Montco agreed to amend the Black Elk Contract in order to provide for pricing on a turn-key basis for its services and stipulated on the record at the confirmation hearing that it would not seek any overages for work completed and expressly priced under the Black Elk Contract.  (ECF No. 64 at 7–8).  After receiving Montco's concessions, the Court confirmed Black Elk's plan.  (Case No. 15-34287, ECF No. 1204).  The Black Elk Trustee consequently argues that Montco's consent to not seek overages must be strictly upheld in order to preserve the reasonable expectations of Black Elk's creditors.  (ECF No. 64 at 8).

Under Section 7.9.4 of the Black Elk Contract, Black Elk agreed to indemnify Montco for unanticipated work encountered during its decommissioning work and caused by a wild well, blowout, or uncontrolled flow.  (ECF No. 33-2 at 9).  Black Elk additionally agreed to indemnify Montco under Section 7.9.8 of the Black Elk Contract in connection with the removal of various hazardous materials and waste.  (ECF No. 33-2 at 9–10).  Because Montco's right to these indemnities is expressly included in the Black Elk Contract, such indemnities are not overages or extra-contractual payments for work covered by turn-key provisions.  Instead, the indemnities

within Section 7.9.4 and 7.9.8 represent contractual obligations of Black Elk to Montco. Because Montco's Amended Complaint included allegations that it performed services to control wild wells, blowouts, and uncontrolled flows on Job sites covered by the Black Elk Contract, as well as to deal with hazardous materials on such sites, Montco's Amended Complaint raises its right to relief against Black Elk under Count II beyond a speculative belief.  The Black Elk Trustee's motion to dismiss Count II of Montco's Amended Complaint is denied.

In opposition to its inclusion in Count II, W&T argues that it owes no indemnity obligations to Montco pursuant to the language of the Black Elk Contract.  (ECF No. 62 at 17). Similar to Argonaut under Count I, W&T asserts that it is not a party to the Black Elk Contract nor is it in privity with Montco, thus failing to bind W&T under any indemnity provision within the Contract.  (ECF No. 62 at 17).  Additionally, although mentioned within the two amendments to the Black Elk Contract, those amendments specifically denied the assumption of any liability or obligations by W&T.  (ECF No. 33-3 at 4; ECF No. 33-4 at 5).

Similar to its allegations against Argonaut under Count I, Montco's allegations against W&T under Count II, when taken as true, fail to state a plausible claim for relief.  W&T is not in privity of contract with Montco and is thus not obligated to indemnify Montco for its work dealing with wild wells, blowouts, uncontrolled flows, and hazardous materials on Black Elk Job sites.  Instead, W&T's payment obligations are limited by the language of the Black Elk Contract's amendments.  Montco's Amended Complaint thus fails to plead a plausible claim for relief against W&T under Count II.  Count II is dismissed as to W&T.

### *Count III-Scope of Work Claims*

As part of Count III of its Amended Complaint, Montco asserts that Black Elk, Argonaut, and other Defendants agreed to compensate it for completing work necessary to successfully

decommission the Job sites covered by the Black Elk Contract.  (ECF No. 33 at 26).  Montco believed that the scope of its decommissioning work was disclosed and identified within the Black Elk Contract and the negotiations for that Contract.  (ECF No. 33 at 26).  However, after inspecting those sites, Montco alleges that it discovered unanticipated work that it was forced to complete in order to effectively decommission various Job sites.  (ECF No. 33 at 26).  Montco asserts that it subsequently advised Black Elk and the other Defendants of the need for this unanticipated work through daily reports and communications.  (ECF No. 33 at 26–27).  None of the Defendants informed Montco that it should not perform this unanticipated work or that Montco would not be paid for such work beyond the turn-key amounts listed within the Black Elk Contract.  (ECF No. 33 at 27).  Because Defendants knew of this undisclosed and out-of-scope work and Montco's need to complete it, yet still failed to pay Montco for such additional services, Montco alleges that it is entitled to breach of contract damages.  (ECF No. 33 at 27).

Defendants present numerous arguments in favor of dismissal of Count III.  For instance, Argonaut claims that Montco's Amended Complaint fails to plausibly show how Montco's unanticipated work is not covered by the turn-key pricing explicitly listed in the Black Elk Contract for Montco's services.  (ECF No. 106 at 14).  W&T, McMoRan, and Merit argue that, based upon the clear language of the Black Elk Contract and its amendments, they are not signatories or parties to the Contract and its amendments.  (ECF No. 62 at 17).  Consequently, W&T, McMoRan, and Merit claim that they owe no contractual obligations to Montco and thus are not liable to pay Montco for extra-contractual work completed.  (ECF No. 62 at 17).

The Black Elk Contract constitutes a pure turn-key contract under which any additional work undertaken by Montco to complete its decommissioning responsibilities would be compensated under the turn-key pricing listed within the Contract for each Job. Multiple reasons

exist for interpreting the Black Elk Contract as a turn-key contract.  First, the parties titled the Black Elk Contract the "Amended and Restated *Turnkey* Service Agreement."  (ECF No. 32-2 at 2) (emphasis added).  Second, Black Elk agreed to pay Montco on a "turnkey basis per Job," meaning that the "Price for each Job shall be firm and fixed regardless of the actual fees, costs, and expenses incurred" by Montco when completing its decommissioning work on each Job site. (ECF No. 33-2 at 3).  These provisions document that the parties intended Montco be paid a fixed price regardless of the actual costs of its decommissioning work.

The Black Elk Contract is a pure turn-key contract.  Montco cannot recover any amounts in excess of the turn-key price listed in the Black Elk Contract for its decommissioning services. Accordingly, Count III of Montco's Amended Complaint is dismissed.[1]

### Count IV-Quantum Meruit

As an alternative to its breach of contract claims, Count IV of Montco's Amended Complaint alleges a claim for *quantum meruit* against all of the Defendants.  (ECF No. 33 at 27). Montco specifically argues that it conferred a benefit upon all Defendants by performing additional, undisclosed work on Black Elk Job sites in order to properly decommission those sites.  (ECF No. 33 at 27).  Montco claims that it did not know nor could it have known about the unanticipated issues it discovered at the Black Elk Job Sites.  (ECF No. 33 at 27).  While completing this additional but unanticipated work, Montco states that it provided daily reports on its work to Black Elk, the Working Interest Parties, and the Legacy Owners.  (ECF No. 33 at 28). These Defendants then accepted the benefits of Montco's unanticipated work on the Job sites but failed to compensate Montco for its work; these Defendants were thus unjustly enriched to the

---

[1] As stated above, Montco's claim for indemnities against Black Elk deals with indemnities expressly included in Sections 7.9.4 and 7.9.8 of the Black Elk Contract.  Consequently, such indemnities are not extra-contractual payments for work covered by the Black Elk Contract's turn-key provisions.  The dismissal of Count III of Montco's claim thus does not bar Montco from asserting Count II against Black Elk.

detriment of Montco.  (ECF No. 33 at 28).  Consequently, Montco asserts that it is entitled to recover damages from Defendants under the equitable remedy of *quantum meruit*.

Defendants move to dismiss Count IV primarily on the grounds that *quantum meruit* is an equitable remedy that arises independent of a contract.  (ECF No. 62 at 20).  For example, W&T, McMoRan, and Merit argue that the Black Elk Contract, a valid and court-approved agreement, covers all of Montco's services on the Black Elk Job sites.  (ECF No. 62 at 19).  Although Montco's *quantum meruit* claim is pleaded in the alternative to its breach of contract claims, the services Montco provided are covered by the Black Elk Contract.  (ECF No. 62 at 19–20). Additionally, even if the remedy of *quantum meruit* were applicable to this proceeding, Montco failed to plead a plausible claim that, if Black Elk failed to pay Montco for all services performed on its Sites, the other Defendants made an implied promise to pay Montco.  (ECF No. 62 at 20). Consequently, Montco's *quantum meruit* claim must be dismissed.  (ECF No. 62 at 19).

*Quantum meruit* is an equitable remedy "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted."  *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990).  To recover under *quantum meruit*, a claimant must prove that: (i) valuable services were rendered; (ii) for the person sought to be charged; (iii) which services were accepted by the person sought to be charged; (iv) under such circumstances as reasonably notified the person sought to be charged that the plaintiff was expecting to be paid by the person sought to be charged.  *Id.*  A party generally cannot recover under the remedy of *quantum meruit* when there is a valid contract covering the services furnished by the plaintiff.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005). Recovery in *quantum meruit* is allowed when non-payment for the plaintiff's services would "result in an unjust enrichment to the party benefited by the work."  *City of Ingleside v. Stewart*,

554 S.W.2d 939, 943 (Tex. Civ. App.—Corpus Christi 1977, *writ ref'd n.r.e.*).  A recovery pursuant to unjust enrichment is "based upon the promise implied by law to pay for beneficial services rendered and knowingly accepted."  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 740.

As stated above, the Black Elk Contract constitutes a pure turn-key contract covering all services, whether listed or unanticipated, to be completed by Montco on the Black Elk Job sites. Any right of Montco to payment or indemnity for the services it rendered on the Job sites is covered by the provisions of the Black Elk Contract.  Montco's *quantum meruit* claim thus fails as a matter of law.

Additionally, no factual allegations exist establishing that any Defendants other than Black Elk made implied promises to fulfill Black Elk's obligations to Montco under the Black Elk Contract.  Instead, the language of the Black Elk Contract and its two amendments show a complete lack of any indemnity promises on the part of the other Defendants.

Finally, Montco's *quantum meruit* cause of action is premised on the existence of the daily reports identified above.  Montco alleges that these daily reports reflected that it performed additional, unanticipated work on the Black Elk Job sites and that Defendants accepted the benefits of this daily work.  (ECF No. 33 at 28)._ What Montco fails to confront is the fact that it produced the daily reports.  (ECF No. 33 at 28).  If Montco knew that the work was beyond the scope of the Jobs listed in the Black Elk Contract, why did Montco fail to request a change order or other authorization to proceed with this additional work?  At oral argument, the Court required Montco to identify whether it performed the work as a volunteer or in some other capacity. (ECF No. 135 at 80).  Montco responded by alleging that it was not a volunteer but instead performed the additional work as an independent contract under the Contract.  (ECF No. 138 at

2).   Montco fails to identify any portion of the Contract that authorized it to perform such unanticipated, non-turn-key work in this capacity.

Count IV of Montco's Amended Complaint is dismissed.

### Count V-Misrepresentation

As stated on the record on August 28, 2017, Montco is allowed to replead Count V of its amended compliant with respect to additional work completed as part of its decommissioning of Black Elk Job sites that was occasioned by a misrepresentation.  (ECF No. 135 at 58).  Montco's Omnibus Brief stipulates that Montco brings Count V against Black Elk and the Legacy Owners but voluntarily dismisses Count V as to the Working Interest Parties and Argonaut.  (ECF No. 115 at 43 n.9).  Black Elk and the Legacy Owners' motions to dismiss are accordingly denied.

### Count VI-Declaratory Judgment

Count VI of Montco's Amended Complaint seeks a declaration of the parties' rights and other legal relations.  (ECF No. 33 at 30).  Montco alleges that the Black Elk Contract is a valid and enforceable contract between it and the Defendants.  (ECF No. 33 at 29).  As Montco completed Jobs under the Black Elk Contract, Defendants were required to release collateral in order for Black Elk to pay Montco for its services.  (ECF No. 33 at 29).  Additionally, Defendants were obligated to indemnify Montco for services it performed to control wild wells, blowouts, and uncontrolled flows at particular Black Elk Job sites.  (ECF No. 33 at 29).  Defendants failed to remit the required collateral and to indemnify Montco, thus breaching the Black Elk Contract.  (ECF No. 33 at 30).  Accordingly, Montco alleges that it is entitled to terminate the Black Elk Contract for certain Jobs and collect the entire turn-key Job price for its rendered services.  (ECF No. 33 at 30).

Largely, the Defendants moved to dismiss Count VI of Montco's on the basis that the controversy at hand will not be resolved by the declarations Montco seeks.  (ECF No. 62 at 24).  Defendants argue that Montco's contested declarations are duplicative of its breach of contract claims.  (ECF No. 62 at 24).  Consequently, Count VI of Montco's Amended Complaint should be dismissed because it would be resolved as part of the other claims in this proceeding.  (ECF No. 103 at 27).

Courts have "broad discretion to grant or decline to grant declaratory judgment."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 277 (1995).  The two principle factors in favor of rendering declaratory judgments are: "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding."  *Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.*, 986 F.2d 1463, 1471 (5th Cir.1993).  Ultimately, however, if a request for declaratory judgment adds nothing to an existing suit, it may be dismissed.  *Am. Equip. Co. v. Turner Bros. Crane & Rigging, LLC*, 2014 WL 3543720, at *3 (S.D. Tex. July 14, 2014).  Courts in the Fifth Circuit regularly reject declaratory judgment claims seeking the resolution of issues that will be resolved as part of the claims in the lawsuit.  *See, e.g.*, *Burlington Ins. Co. v. Ranger Specialized Glass, Inc.*, 2012 WL 6569774, at *3 (S.D. Tex. Dec.17, 2012) (dismissing a declaratory judgment counterclaim that was a "mirror image of the . . . Complaint").

Montco's declaratory judgment claim is duplicative of its breach of contract claims against Defendants.  Just as in its breach of contract claims, Montco alleges under Count VI that Defendants failed to pay Montco for the decommissioning services it completed pursuant to the valid Black Elk Contract, causing Defendants to breach the Contract and making them liable for

damages to Montco.  (ECF No. 33 at 30; *see also* ECF No. 33 at 24–27).  All such breach of contract claims against Defendants were either dismissed above or prior to the Court taking this matter under advisement, except for Count II against Black Elk.  Accordingly, Count VI of Montco's Amended Complaint is moot or would add nothing to the adversary proceeding or Montco's claims beyond what its breach of contract claims already accomplish.  Accordingly, Count VI of Montco's Amended Complaint is dismissed.

### Conclusion

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **October 3, 2017.**

_____

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE