

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
10/31/2018

| | | |
|---|---|---|
| **IN RE:** | § | |
| **MONTCO OFFSHORE, INC.,** *et al* | § | **CASE NO: 17-31646** |
| Debtor(s) | § | |
| | § | **CHAPTER  11** |
| | § | |
| **MONTCO OILFIELD CONTRACTORS, LLC** | § | |
| | § | |
| Plaintiff(s) | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 17-3249** |
| | § | |
| **BLACK ELK ENERGY OFFSHORE OPERATIONS, LLC,** *et al* | § | |
| | § | |
| Defendant(s) | § | |

## MEMORANDUM OPINION

Montco Oilfield Contractors, LLC filed its Second Amended Complaint alleging misrepresentation, breach of contract, and *quantum meruit* claims against Black Elk Energy Offshore Operations, LLC and JX Nippon Oil Exploration (U.S.A.) Limited.  The Complaint alleges that Montco is entitled to recover unpaid amounts owed to Montco for performing plugging and abandonment services, damages associated with performing additional, unanticipated decommissioning work, and damages arising from alleged misrepresentations and omissions surrounding the work.

Black Elk and Nippon moved to dismiss Montco's Second Amended Complaint pursuant to Federal Rules of Civil Procedure 8 and 9.  Black Elk and Nippon alternatively argue that Montco's claims fail as a matter of law or are barred by Texas law.

Nippon's Motion to Dismiss Claim I of Montco's Second Amended Complaint as it refers to Nippon is granted.  Black Elk's Motion to Dismiss Claim I of Montco's Second Amended Complaint as to Black Elk is denied as to Job 2, EC 33 CF.  Black Elk's Motion to

Dismiss Claim I of Montco's Second Amended Complaint as to Black Elk is granted as to all other jobs. Black Elk's Motion to Dismiss Count II of Montco's Second Amended Complaint is granted as to Montco's false, misleading, and incomplete information claim; failure to pay claim; and Turnkey Job Price and Incentive Fee claim. Black Elk's Motion to Dismiss Count II of Montco's Second Amended Complaint is denied as to the indemnity claim. Black Elk's Motion to Dismiss Count IV of Montco's Second Amended Complaint is granted.

### Background

On August 11, 2015, three creditors filed an involuntary chapter 7 bankruptcy petition against Black Elk. (Case No. 15-34287, ECF No. 1). Black Elk filed its consent to the Order for Relief and a motion to convert its involuntary chapter 7 case to a voluntary chapter 11 case on August 31, 2015. (Case No. 15-34287, ECF Nos. 68, 69). The Court subsequently granted Black Elk's motion. (Case No. 15-34287, ECF No. 75). Montco, a Louisiana limited liability company, is a project management, engineering, and oilfield personnel service provider and general contractor. (ECF No. 33 at 2). As part of the confirmation of Black Elk's chapter 11 plan, Montco and Black Elk entered into a Turnkey Service Agreement (the "Black Elk Contract"), which the Court subsequently approved. (Case No. 15-34287, ECF No. 682).

Under the Black Elk Contract, Montco agreed to perform the plugging and abandonment work on Black Elk's offshore oil and gas sites in order to bring those sites into conformance with federal regulations. (ECF No. 33-2 at 2). The Black Elk Contract listed specific jobs that Montco was required to complete. (ECF No. 33-2 at 21–22). In exchange for completing these jobs, Montco would be paid a turn-key price for each obligation it completed, "regardless of the actual fees, costs and expenses incurred." (ECF No. 33-2 at 3). Montco would receive payment

upon the release of proceeds from surety bonds securing or cash collateral collateralizing Black Elk's plugging and abandonment obligations on its sites.  (ECF No. 33-2 at 3).

Two amendments—dated May 26, 2016, and June 11, 2016—supplemented the Black Elk Contract.  (ECF No. 33-3; ECF No. 33-4).  The first amendment added Jobs 19, 20, and 21 to the list of jobs to be completed by Montco as part of its responsibilities under the Black Elk Contract.  (ECF No. 33-3 at 3).  The second amendment added Jobs 22, 23, 24, and 25 to the list of jobs for Montco to complete.  (ECF No. 33-4 at 4).  Both amendments provided a funding mechanism to pay Montco for its services on these additional jobs.  (ECF No. 33-3 at 4; ECF No. 33-4 at 4–5).

Upon approval of the Black Elk Contract, Montco commenced its plugging and abandonment work on the Black Elk job sites.  (ECF No. 33 at 17).  Montco's services included: make-safe operations for preparing personnel platforms; the investigation of job sites for well intervention, and well plugging and abandonment spreads in order to abandon all wells; the investigation of job sites with additional equipment to clean vessels and prepare platforms for decommissioning; the deconstruction of platforms; the extraction of objects from the Gulf of Mexico; the employment of vessels to trawl each site; and the filing of end-of-operations reports with the federal government for site clearance.  (ECF No. 33 at 17).

In the course of performing under the Black Elk Contract, Montco alleges that it encountered undisclosed wells, abandoned equipment, and structures vastly different than those described in the Black Elk Contract, Black Elk and Nippon's disclosures during contract negotiations, and government or publicly available records.  (ECF No. 33 at 6–7).  These liabilities consequently required Montco to perform substantial amounts of unanticipated work in order for Black Elk's Job sites to be lawfully decommissioned.  (ECF No. 33 at 6).  Montco

allegedly notified Black Elk of these unanticipated liabilities and resulting work through daily reports and summaries.  (ECF No. 33 at 7).  Black Elk purportedly did not object to Montco completing this unanticipated work.  Black Elk, however, refuses to pay Montco for this work. (ECF No. 33 at 7).

Montco also claims that it identified and undertook work on various Black Elk job sites to manage uncontrolled well flows, as well as the cleaning and disposal of natural and human-made hazardous materials and waste.  (ECF No. 33 at 6).  These issues with the job sites also required Montco to take actions beyond those listed in the Black Elk Contract.  (ECF No. 33 at 6).  These issues were not disclosed to Montco at the time the parties negotiated and executed the Black Elk Contract.  (ECF No. 33 at 6).  However, Montco asserts that Black Elk agreed to indemnify it for such unanticipated work under Sections 7.9.4 and 7.9.8 of the Black Elk Contract because such problems are impossible to predict in advance for purposes of a turn-key contract for plugging and abandonment work.  (ECF No. 33 at 13–14; ECF No. 33-2 at 9–10).

On March 17, 2017, Montco filed its own chapter 11 bankruptcy petition.  (Case No. 17-31646).  On May 18, 2017, Montco filed this adversary proceeding seeking to recover amounts allegedly due to it under the Black Elk Contract, as well as damages associated with its unanticipated work.  (ECF No. 1).  The "Defendants" in Montco's suit included:

- Black Elk, the owner and operator of the oil drilling platforms and oil wells upon which Montco worked.  (ECF No. 33 at 3).

- The Black Elk Trust, the liquidating trust for Black Elk's bankruptcy estate.  (ECF No. 33 at 3).

- Richard S. Schmidt, the Trustee to the Black Elk Trust.  (ECF No. 33 at 3).

- W&T Offshore Inc., an independent oil and natural gas acquisition, exploitation, and exploration company.  (ECF No. 33 at 3).  W&T was a predecessor in title to various Job sites covered by the two amendments to the Black Elk Contract.  (ECF No. 62 at 5).  Under the amendments, W&T expressly agreed to a limited, conditional payment

obligation to Montco.  (ECF No. 33–3 at 4; ECF No. 33-4 at 4–5; ECF No. 62 at 5–6).

- McMoRan Oil & Gas LLC, an oil and natural gas exploration, development, and production company.  (ECF No. 33 at 3).  McMoRan holds a working interest in one Job site covered by the first amendment to the Black Elk Contract.  (ECF No.62 at 5).  Under the two amendments to the Black Elk Contract, McMoRan expressly agreed to a limited, conditional payment obligation to Montco.  (ECF No. 33-3 at 4; ECF No. 62 at 5–6).

- Energy XXI GOM, LLC, an owner and operator of oil and gas properties.  (ECF No. 33 at 3).  Montco categorizes Energy XXI as a working interest holder because it co-owns interests in Job sites with Black Elk.  (ECF No. 103 at 3).  Energy XXI's plugging and abandonment obligations with respect to its co-owned sites are secured by surety bonds issued by Westchester Fire Insurance Company, the surety, on behalf of Energy XXI, the principal, in favor of BOEM, the obligee.  (ECF No. 103 at 3).

- Argonaut Insurance Company, a specialty property and casualty insurance, reinsurance, and managed risk solutions company.  (ECF No. 33 at 3).  Argonaut executed performance bonds on behalf of Black Elk and other various obligees to secure performance of plugging and abandonment obligations on Black Elk job sites.  (ECF No. 103 at 3–4).  The completion of Montco's services on various sites triggers certain payment obligations of Argonaut due to Montco.  (ECF No. 33 at 6).

- Westchester Fire Insurance Company, a fire and casualty insurance company.  (ECF No. 33 at 4).  Westchester executed performance bonds to fund Energy XXI's share of the decommissioning costs on two Black Elk Job sites.  (ECF No. 63 at 2).  Westchester agreed to release its collateral under the two bonds to Montco once Montco completed the decommissioning work on the sites and BOEM released Westchester's bonds.  (ECF No. 63 at 2–3).

- Energy Resources Technology GOM, LLC, an oil and gas exploration, generation, production and development company.  (ECF No. 33 at 4).  Montco categorizes Energy Resources as a working interest party.  (ECF No. 33 at 5).  Pursuant to Section 2 of the of the of the second amendment, Energy Resources agreed to pay Montco for its services on two separate Black Elk job sites within 45 days once these jobs were completed and Energy Resources received performance reports.  (ECF No. 33–4 at 4; ECF No. 104 at 2–3).

- Fairways Offshore Exploration, Inc., an oil and gas exploration and development company.  (ECF No. 33 at 4).  Montco categorizes Fairways as a working interest party whose interest falls under the Black Elk Contract.  (ECF No. 33 at 5).

- Fieldwood Energy LLC, an oil and gas acquisition and development company.  (ECF No. 33 at 4).  Fieldwood was a co-working interest owner with Black Elk on one Job site covered by the second amendment to the Black Elk Contract.  (ECF No. 33–4 at

4–5; ECF No. 105 at 6–7).  Fieldwood signed the second amendment for the purpose of funding its respective working interest share of the decommissioning work on the Job site; Fieldwood did not assume any other liabilities or obligations beyond payment of the decommissioning work on the site upon which it held a working interest.  (ECF No. 105 at 7).

- JX Nippon Oil Exploration U.S.A. Limited, an oil and gas exploration, development, and production company.  (ECF No. 33 at 4).  Montco categorizes Nippon as a legacy owner because it previously owned interests in Black Elk job sites.  (ECF No. 103 at 3).  Argonaut, among other sureties, executed performance bonds on behalf of Black Elk, the principal, in favor of Nippon, the obligee, to secure performance of plugging and abandonment obligations on the sites previously owned by Nippon.  (ECF No. 103 at 3–4).

- Merit Energy Company, L.L.C., a private equity firm specializing in the acquisition, operation, and development of oil and gas properties.  (ECF No. 33 at 4).  Montco categorizes Merit as a legacy owner of Black Elk Job sites.  (ECF No. 33 at 5).  Merit is not a signatory party to either amendment to the Black Elk Contract.  (ECF No. 62 at 6).

- Maritech Resources, Inc., an acquirer, developer, and producer of oil and gas.  (ECF No. 33 at 4).  Montco categorizes Maritech as a legacy owner of Black Elk Job sites.  (ECF No. 33 at 5).

- Travelers Bond & Specialty Insurance, a commercial property casualty and personal insurance underwriter.  (ECF No. 33 at 5).  Travelers, as surety, executed a bond covering the plugging and abandonment obligations on a Black Elk job site.  (ECF No. 98 at 4).  The bond listed the United States acting through BOEM.  (ECF No. 98 at 4).

- The Doe Defendants, purported legacy owners or other parties interested in the wells and job sites subject to Montco's Amended Complaint.  (ECF No. 33 at 5).

W&T, Nippon, Merit, Maritech, and the Doe Defendants are collectively referred to as the "Legacy Owners."  McMoRan, Energy XXI, Energy Resources, Fairways, and Fieldwood are collectively referred to as the "Working Interest Parties."

Montco's Amended Complaint asserted six claims against the Defendants:

(i)     Count I.  A breach of contract claim against Black Elk, Argonaut, and the other signatories to the Black Elk Contract's amendments based upon those Defendants' failure to remit payment to Montco for the work it completed pursuant to the Black Elk Contract.  (ECF No. 33 at 24).

(ii)   Count II.  A breach of contract claim against Black Elk and W&T for failure to indemnify Montco under the Black Elk Contract for services performed while controlling wild or uncontrolled wells, as well as the cleaning and disposing of hazardous materials and waste.  (ECF No. 33 at 25).

(iii)   Count III.  A breach of contract claim against all of the Defendants for failing to pay Montco for the extra-contractual work it completed on the Black Elk Job sites.  (ECF No. 33 at 26–27).

(iv)   Count IV.  In the alternative, a *quantum meruit* claim against all of the Defendants for accepting the benefits of Montco's unanticipated work but failing to pay Montco for such benefits.  (ECF No. 33 at 28).

(v)   Count V.  In the alternative, a misrepresentation claim against all of the Defendants for misrepresentations and omissions of material fact made to Montco during the negotiation and bidding process for the Black Elk Contract regarding the true scope of the work required to plug and abandon the oil wells and structures on the Black Elk Job sites.  (ECF No. 33 at 28).

(vi)   Count VI.  A claim for declaratory judgment of Montco's legal rights and the Defendants' obligations to Montco.  (ECF No. 33 at 29–30).

On August 10, 2017, Montco stipulated to the dismissal of Travelers from the adversary proceeding.  (ECF No. 111).  On August 14, 2017, Montco stipulated to the dismissal of Westchester Fire from the adversary proceeding.  (ECF No. 113).  The remaining Defendants individually and jointly filed motions to dismiss Montco's Amended Complaint.

On August 15, 2017, Montco filed an Omnibus Brief in Opposition to Defendants' Motions to Dismiss and stipulated to the withdrawal of Count I of its Amended Complaint against all parties, except Black Elk and Argonaut, with prejudice.  (ECF No. 115 at 23 n.4).  Montco's Omnibus Brief additionally stipulated to the dismissal of Count V of its Amended Complaint against the Working Interest Parties and Argonaut without prejudice.  (ECF No. 155 at 43 n.9).

The Court held a hearing on the Defendants' motions to dismiss Montco's Amended Complaint on August 21, 2017.  During the hearing, the Court stated that Montco was allowed to

replead its misrepresentation claim against Defendants as to the additional, unanticipated work it completed pursuant to the Black Elk Contract.  (ECF No. 135 at 58).  Additionally, the Court limited Montco's indemnity claim against Black Elk based upon the Black Elk Contract.  (ECF No. 135 at 64–65).

On September 11, 2017, the Court took Defendants' Motions to Dismiss Montco's Amended Complaint under advisement.  On October 3, 2017, the Court issued a Memorandum Opinion and Dismissal Order on the motions to dismiss in which the Court: dismissed Count I of the Amended Complaint as to all Defendants and without prejudice as to Black Elk upon the satisfaction of the conditions to payment; dismissed Count II as to all Defendants except Black Elk; dismissed Counts III, IV, and VI as to all Defendants; and allowed Montco to replead Count V.  (ECF No. 146; ECF No. 147).

Montco filed a Second Amended Complaint on April 2, 2018.  (ECF No. 158).  Montco's Second Amended Complaint asserts four claims against Black Elk and Nippon:

(i)     Count I.   A misrepresentation claim against Black Elk and Nippon for misrepresentations and omissions of material fact made to Montco during the negotiation and bidding process for the Black Elk Contract regarding the true scope of the work required to plug and abandon the oil wells and structures on the Black Elk Job sites.  (ECF No. 158 at 78–85).

(ii)    Count II.   A breach of contract claim against Black Elk for providing false, misleading, and incomplete information regarding the Jobs; failing to pay amounts due to Montco and demand payment from its Working Interest Parties, its Legacy Owners, and the issuers of bonds covering the plugging and abandonment work performed by Montco; and failing to pay Montco the entire Turnkey Job Price and the prorated Incentive Fee under Sections 6.1 and 6.3 of the Black Elk Contract.  (ECF No. 158 at 86–91).

(iii)   Count III.   A *quantum meruit* claim against Black Elk for accepting the benefits of the work Montco performed under the first and second amendments of the Black Elk Contract that never became effective because the parties did not sign the amendments and Black Elk did not procure their signatures.  (ECF No. 158 at 92–97).

(iv)    Count IV.  A *quantum meruit* claim against Black Elk for accepting the benefits of Montco's unanticipated work, but failing to pay Montco for such benefits. (ECF No. 158 at 98–105).

On March 30, 2018, Montco and Maritech agreed that any claims that Montco may have against Maritech were abated until further order of the Court.  (ECF No. 157).  The remaining Defendants, Black Elk and Nippon, individually and jointly filed Motions to Dismiss Montco's Second Amended Complaint, generally arguing that:

- Montco's Second Amended Complaint fails to plead the facts and its causes of action with particularity, as required by Federal Rule of Civil Procedure 9(b);

- Montco cannot state a plausible claim for its various breach of contract allegations, those claims fail as a matter of law, or those claims are barred by Texas law; and

- Montco's *quantum meruit* claim is barred because it was previously decided by this Court.  (ECF No. 162 at 12, 17–26; ECF No. 160 at 17–36).

On June 14, 2018, Montco voluntarily dismissed Count III of its Second Amended Complaint.  (ECF No. 167).

The Court took this matter under advisement following a hearing on Black Elk and Nippon's Motions to Dismiss held on June 21, 2018.

## Jurisdiction

The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).  This adversary proceeding has been referred to the Bankruptcy Court pursuant to 28 U.S.C. § 157(a).

## Legal Standard

The Court reviews motions under Federal Rule of Civil Procedure 12(b)(6) "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam).  However, the Court "will not

strain to find inferences favorable to the plaintiff." *Southland Sec. Corp. v. INSpire Ins. Solutions Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (internal quotations omitted).

To avoid dismissal for failure to state a claim, a plaintiff must meet Federal Rule of Civil Procedure 8(a)(2)'s pleading requirements. Rule 8(a)(2) requires a plaintiff to plead a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In *Ashcroft v. Iqbal*, the United States Supreme Court held that Rule 8(a)(2) requires that "the well-pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." 556 U.S. 662, 679 (2009) (quoting Rule 8(a)(2)). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotations omitted).

Fraud claims must, in addition, meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirements. Under Rule 9(b), fraud claims must be alleged with particularity concerning the circumstances of the fraud. FED. R. CIV. P. 9(b); *see Oppenheimer v. Prudential Sec. Inc.*, 94 F. 3d 189, 195 (5th Cir. 1996) (upholding the district court's dismissal of fraud claims where the plaintiff failed to allege when an allegedly fraudulent sales charge was incurred or the extent of her damages); *Red Rock v. JAFCO Ltd.*, 1996 WL 97549, at *3 (5th Cir. Feb. 16, 1996) (holding that the plaintiff's allegations did not satisfy Rule 9(b) where they failed to allege the time, place, or content of any misrepresentations). "To plead adequately, the plaintiff must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Sullivan v. Leor*

*Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (quoting *ABC Arbitrage v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002)).

## Analysis

### Count I. Montco's Misrepresentation Claims

In Count I of its Second Amended Complaint, Montco alleges various misrepresentation claims against Black Elk and Nippon, including that: Black Elk and Nippon made knowing and reckless misrepresentations and omissions during their negotiation and bidding process regarding the true scope of the work required to plug and abandon the wells and structures under the Black Elk Contract; these false representations and material omissions induced Montco to agree to the terms of the Black Elk Contract; Montco did not know, and could not have known, the truth about the representations and omissions until it was mobilized and on-site, preventing it from building these additional costs into the Black Elk Contract; Black Elk and Nippon intended that Montco rely on their false representations and omissions; Montco reasonably and justifiably relied on Black Elk and Nippon's false representations and omissions in deciding to enter into the Black Elk Contract and perform the work thereunder; and Montco was injured as a direct and proximate result of Black Elk and Nippon's false representations and omissions.  (ECF No. 158 at 78–85).

In response to Montco's misrepresentation claims against it, Nippon argues that Montco failed to plead its misrepresentation claims as to Nippon with particularity as instructed by the Court and required by the Fifth Circuit.  (ECF No. 160 at 17–24).

As to Montco's misrepresentation claims against Black Elk, Black Elk argues that Montco's Second Amended Complaint failed to state a plausible claim for fraudulent misrepresentation under Rule 12(b)(6).  (ECF No. 160 at 25–36).  Specifically, Black Elk claims

that: Montco's alleged misrepresentations are not material, as required to adequately plead a claim, because they are vague and imprecise; Montco did not justifiably rely upon any alleged misrepresentations or omissions by Black Elk as a matter of law because Montco discovered the misrepresentations before it performed the work; Montco made the decision to perform the additional work itself, causing its alleged damages; Section 1.1.1 of the Black Elk Contract placed the risk of unexpected conditions or additional work on Montco, barring Montco from bringing its misrepresentation claims; and Montco's misrepresentation claims are barred by collateral or judicial estoppel because the binding, agreed Order submitted to the Court on the Black Elk Contract stated that the Contract was negotiated "at arm's length" and "made on an informed basis." (ECF No. 160 at 25–36).

Under Texas law, misrepresentation claims are divided into either an actual fraudulent misrepresentation or a negligent misrepresentation. To prove actual fraud, a plaintiff must plead the following elements: "(i) a material misrepresentation was made; (ii) the representation was false; (iii) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (iv) the representation was made with the intention that it be acted upon by the other party; (v) the other party actually and justifiably acted in reliance upon the representation; and (vi) the other party suffered injury." *In re FirstMerit Bank*, 52 S.W.3d 749, 758 (Tex. 2001) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

"To prevail on a cause of action for negligent misrepresentation, a plaintiff must show: (i) a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest; (ii) the representation conveyed 'false information' for the guidance of others in their business; (iii) the defendant did not exercise reasonable care or competence in

obtaining or communicating the information; and (iv) the plaintiff suffered a pecuniary loss by justifiably relying on the representation." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., LLC*, 546 S.W.3d 648, 653-654 (Tex. 2018) (quoting *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1992)).

Montco's complaint pleads "fraudulent misrepresentations and/or omissions," implicating both fraudulent and negligent misrepresentation as the basis for its cause of action.  (ECF No. 158 at 30–31).  A claim for pure negligent misrepresentation does not invoke the heightened pleading standard of Rule 9(b).  *Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003).  However, the Fifth Circuit has held that when a plaintiff's cause of action involves both fraudulent and negligent misrepresentation claims, which arise from common facts and when the plaintiff has "not urged a separate focus on the negligent misrepresentation claims", Rule 9's heightened pleading standard applies.  *Id.*  Accordingly, to survive a motion to dismiss, Montco's complaint must set forth the "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Id.* (quoting *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir.1992)).  "Put simply, Rule 9(b) requires the 'who, what, when, where, and how' to be laid out."  *Benchmark Elec., Inc.*, 343 F.3d at 724 (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).  "Allegations about conditions of the mind, such as defendant's knowledge of the truth and intent to deceive, however, may be pleaded generally."  *Id.* (citing FED. R. CIV. P. 9(b)).

**Misrepresentation Claims – Nippon**

**1. Job 11, SM 23 H00–7**

For Job 11, SM 23H00–7, the Black Elk Contract required Montco to provide platform preparation, caisson removal, conductor removal, and site clearance. (ECF No. 158 at 48). Montco was not required to plug and abandon the well under the Contract. (ECF No. 158 at 48). Montco pleads that Nippon provided it with a report stating only that the H007 well was previously temporarily abandoned. (ECF No. 158 at 48). However, when Montco mobilized to the site, it discovered that the well was improperly abandoned. (ECF No. 158 at 48). Montco claims that the Bureau of Safety and Environmental Enforcement ("BSEE") required it to properly abandon the well, and that BSEE would not provide the permit necessary to perform the contracted platform removal until the well was properly re-plugged and tested. (ECF No. 158 at 48). Consequently, Montco claims that it performed unexpected, additional work that was out of the Contract's scope. (ECF No. 158 at 48).

Montco failed to plead its misrepresentation claim against Nippon as to Job 11, SM 23H00–7 with sufficient particularity as required by Rule 9(b). Montco merely alleges that Nippon "provided a report confirming that the H007 well was previously temporarily abandoned." (ECF No. 158 at 48). This statement fails to provide any details about the report, and does not state when or where the report was "provided." *See Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 551 (5th Cir. 2010) (dismissing plaintiff's fraud claim after he failed to allege who at the defendant company made the fraudulent statements, or when or where they occurred).

Nippon's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 11, SM 23H00–7.

## 2.  Job 7, GA 424

For Job 7, GA 424, Montco claims that Black Elk and Nippon supplied it with records showing that well C006 was permanently abandoned.  (ECF No. 158 at 49).  Upon mobilizing, however, Montco pleads that it discovered that well C006 was not permanently abandoned.  (ECF No. 158 at 49).  Montco further claims that BSEE contacted it about "gas spewing from the C–1 & C–2 wells" located at GA 424.  (ECF No. 158 at 49).  Additionally, Montco argues that well C005 sustained casing pressure issues, which Black Elk and Nippon failed to disclose.  (ECF No. 158 at 49).  BSEE consequently required it to address these allegedly misrepresented issues that exceeded the scope of work under the Black Elk Contract.  (ECF No. 158 at 49).

Montco failed to plead its misrepresentation claim against Nippon as to Job 7, GA 424 with sufficient particularity as required under Rule 9(b).  Montco does not specifically identify what records it received from Black Elk or Nippon for well C006, nor does it specify any details about the "records," or when and where the records were "provided."

Nippon's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 7, GA 424.

## Misrepresentation Claims – Black Elk

## 1.  Job 2, EC 33 CF

Ronald McAdams, a document controller and IT professional for Black Elk, allegedly provided Montco with wellbore diagrams on November 4, 2015, and March 18, 2016 for Job 2.  (ECF No. 158 at 46).  Montco claims that it relied on these diagrams to bid on Job 2.  (ECF No. 158 at 46).  These diagrams allegedly showed a tubular wellbore with unobstructed access to the producing zone.  (ECF No. 158 at 46).  However, Montco claims it later discovered that an unknown object was obstructing the wellbore.  (ECF No. 158 at 46).  After several failed

attempts at removing the object, Montco contacted Black Elk on April 19, 2016.  (ECF No. 158 at 46).  Black Elk allegedly revealed that it had "additional wellbore diagrams that it had not previously shared with Montco."  (ECF No. 158 at 46).  Additionally, Joe Bruno of Black Elk allegedly "admitted that the wellbore diagrams originally provided . . . were 'useless.'"  (ECF No. 158 at 46).  Montco claims that after further delays in receiving the "new" information from Black Elk, Montco ultimately deployed a snubbing unit and purportedly discovered a "severed and sand stuck coiled tubing string left in the well during a previously failed sand clean out attempt that was never previously disclosed."  (ECF No. 158 at 46).  Because it relied on the original wellbore diagrams provided that were "useless," Montco claims that it had to perform additional, unexpected work in order to complete the well abandonment.  (ECF No. 158 at 46).

Montco's claim against Black Elk as to Job 2, EC 33 CF satisfies the pleading requirements of Rule 9(b).  Montco's pleaded facts show that the misrepresentations as to the wellbore tubular access were made on the wellbore diagrams, which were provided by Ronald McAdams on November 4, 2016 and March 18, 2016, satisfying the who, what, when and where of Rule 9(b).  Further, the complaint indicates that this was done for the purpose of obtaining Montco's bid and subsequent work on Job 2, EC 33 CF.

Black Elk's Motion to Dismiss Count I of Montco's Second Amended Complaint is denied as to Job 2, EC 33 CF.

## 2.  Job 12, SM 341 I00–9

The Black Elk Contract did not obligate Montco to perform plugging and abandonment work on well SM 341 I00–9.  (ECF No. 158 at 47).  Montco claims that Black Elk represented the well as "previously abandoned" by providing it with wellbore schematics from JAB Energy Solutions dated January 16, 2015, which included a note stating "10/13/2014: Tested plug to

1,000 psi for 15 mins – Good Test." (ECF No. 158 at 47). However, upon mobilizing to the site, Montco allegedly discovered that the well would not pressure test and was not properly plugged. (ECF No. 158 at 47). Montco asserts that the information provided by Black Elk was "false." (ECF No. 158 at 47). As such, Montco claims that it had to perform additional, unexpected work to begin the contracted operations on the well. (ECF No. 158 at 47).

Montco failed to plead its misrepresentation claim against Black Elk as to Job 12, SM 341 I00–9 with sufficient particularity under Rule 9(b). Montco's pleaded facts show only that the wellbore schematics and note may have been inaccurate. Although Montco stated that the schematics were dated January 16, 2015, it failed to provide when the schematics were given, by whom they were given, and when and where they were provided to Montco. *See Tel-Phonic Services, Inc.*, 14 F.3d at 1068 ("Rule 9(b) requires the plaintiff to allege 'the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby.'"). Accordingly, Black Elk's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 12, SM 341 I00–9.

### 3.  Job 11, SM 23 H00–7

For Job 11, SM 23 H00–7, the Black Elk Contract required Montco to provide platform preparation, caisson removal, conductor removal, and site clearance. (ECF No. 158 at 48). Montco was not required to plug and abandon the well under the Black Elk Contract. (ECF No. 158 at 48). Montco claims that Black Elk "transferred well files with wellbore schematics" it prepared on June 20, 2011. (ECF No. 158 at 48). However, when Montco mobilized to the site of SM 23 H00–7, it allegedly discovered that the well was improperly abandoned. (ECF No. 158 at 48). BSEE consequently required it to properly abandon the well. (ECF No. 158 at 48).

Montco claims that BSEE would not provide the permit necessary to perform the contracted platform removal until Montco first properly re-plugged and tested the well.  (ECF No. 158 at 48).  Montco thus claims that it had to perform unexpected, additional work outside of the Contract's scope.  (ECF No. 158 at 48).

Montco failed to plead its misrepresentation claim against Black Elk as to Job 11, SM 23 H00–7 with sufficient particularity under Rule 9(b).  Montco's pleaded facts show only that Black Elk transferred well files with wellbore schematics that it prepared on June 20, 2011, to Montco.  Such pleadings do not state with particularity, however, who Montco received the schematics from, when it received the well files, or any specifics of the contents of the well files themselves.  Montco does not allege that the 2011 well files were represented by Black Elk to be updated such that they were currently accurate.  Accordingly, Black Elk's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 11, SM 23 H00–7.

## 4.  Job 7, GA 424

As to Job 7, GA 424, Montco pleads that Black Elk and Nippon supplied it with records showing that well C006 was permanently abandoned.  (ECF No. 158 at 49).  Any work to permanently plug and abandon C006 was consequently not included in Montco's work plan for Job 7.  (ECF No. 158 at 49).  However, upon mobilizing, Montco states that it discovered that well C006 was not permanently abandoned.  (ECF No. 158 at 49).  Montco further asserts that BSEE contacted it about "gas spewing from the C–1 & C–2 wells."  (ECF No. 158 at 49).  Well C005 also had allegedly sustained casing pressure issues that Black Elk and Nippon failed to disclose.  (ECF No. 158 at 49).  BSEE required Montco to address these issues.  (ECF No. 158 at 49).

Montco failed to plead its misrepresentation claim against Black Elk as to Job 7, GA 424 with sufficient particularity as required under Rule 9(b).  Montco does not specifically identify what Black Elk provided beyond "records," nor does it specify when, where, and by whom the "records" were "provided."  Accordingly, Black Elk's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 7 GA 424.

**5.  Job 1, EC 160 A**

For Job 1, Black Elk allegedly supplied Montco with drawings that showed four wells, two open slots, and a framing structure that the wells passed through with two slots marked as "blank."  (ECF No. 158 at 50).  Montco claims that it relied on these drawings to bid on Job 1. (ECF No. 158 at 50).  However, Montco argues that the two open slots were in fact occupied by two drive pipes, and that there was no framing system.  (ECF No. 158 at 50).  As such, Montco claims that "Black Elk knowingly or recklessly provided false information regarding this job." (EFC No. 158 at 50).  These alleged misrepresentations materially increased the work required for the Job.  (ECF No. 158 at 50).

Montco failed to plead its misrepresentation claim against Black Elk as to Job 1, EC 160 A with sufficient particularity as required under Rule 9(b).  While Montco indicates that drawings supplied by Black Elk were inaccurate, it does not specify when, where, or who provided it with the drawings.  Accordingly, Black Elk's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 1, EC 160.

**6.  Job 19, ST 179 A-Valve**

Montco claims that, prior to signing the Black Elk Contract, Black Elk provided it with as-built drawings of the structure for Job 19, ST 179 A-Value.  (ECF No. 158 at 51).  Montco argues that the drawings were incorrect and inconsistent with what it found at the Job 19 site: an

underwater flare pile not shown on the drawings, and previously removed conductors left on the sea floor that had to be taken from the site to achieve site clearance.  (ECF No. 158 at 51). Because of these alleged misrepresentations, Montco asserts that it had to perform extra work not covered by the Black Elk Contract.  (ECF No. 158 at 51).

Montco failed to plead its misrepresentation claim against Black Elk as to Job 19, ST 179 A-Valve with sufficient particularity as required under Rule 9(b).  Although Montco indicates that the drawings were inaccurate as provided, it fails to show the who, when and where needed to overcome Rule 9(b)'s heightened pleading requirements.  *Williams*, 112 F.3d at 178 (dismissing a claim because "[t]he amended complaint d[id] not state a place or time" indicating when the "representations were made.").  Accordingly, Black Elk's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 19, ST 179 A-Valve.

**7.  Job 9**

Montco claims that Job 9 required it to remove the MI 699 platform, the site of two wells that Black Elk purportedly reported to Montco as properly permanently plugged and abandoned. (ECF No. 158 at 52).  However, upon mobilizing to the site in August of 2016, Montco alleges that it discovered that the two wells still had their conductors in place, indicating that the wells were not properly permanently plugged and abandoned.  (ECF No. 158 at 52).  Consequently, Montco claims that it had to remove the conductors in order to remove the MI 699 platform. (ECF No. 158 at 52).

Montco failed to plead its misrepresentation claim against Black Elk as to Job 9 with sufficient particularity as required under Rule 9(b).  While Montco claims that Black Elk "reported" that the two wells were previously permanently plugged and abandoned, it does not provide any further details about the "reporting," nor does it specify when or where this

"reporting" occurred.   Although Montco indicated that "Maritech, the Legacy Owner of the platform, likewise confirmed to [Montco] before the Black Elk contract was executed that the wells were permanently plugged and abandoned . . . ", it again failed to indicate with specificity when and where these misrepresentations were made.   Accordingly, Black Elk's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 9.

**8.  Job 18**

Black Elk allegedly supplied Montco with a drawing showing that well A-4 had been properly abandoned with all required plugs in place to meet the regulatory requirements.  (ECF No. 158 at 53).  Montco claims that it relied on this drawing in bidding on the Job.  (ECF No. 158 at 53).  However, upon mobilizing to the site, Montco argues that it discovered sustained pressure on the outer casings of the well, contrary to the drawings that Black Elk supplied.  (ECF No. 158 at 53).

Further, Montco asserts that Black Elk supplied a drawing of well A-5 showing that the outer casing strings were properly cemented.  (ECF No. 158 at 53).  This information was further confirmed by a memo Black Elk provided determining that there were "no casing pressure issues" as to A-5.  (ECF No. 158 at 53).  However, Montco argues it discovered that the outer casings of well A-5 had 225 psi of sustained casing pressure.  (ECF No. 158 at 53).  In turn, these alleged misrepresentations materially increased the work required to plug and abandon the well.  (ECF No. 158 at 53).

Montco failed to plead its misrepresentation claim against Black Elk as to Job 18 with sufficient particularity as required under Rule 9(b).  While Montco claims that Black Elk supplied it with drawings and a memo, it does not specify when, where or by whom the drawings were supplied.  Although Montco indicated that "Legacy Owner Maritech" had also reported that

well A-4 "had been previously temporarily abandoned and only required conductor removal," information that was in line with the communications provided by Black Elk, it similarly makes no indication as to where or when either communication occurred.  As to the A-5 well, although Montco provides that the misrepresentations evident in the drawings were further confirmed by a Black Elk memo, it again fails to plead with particularly the time and place of the memo provided to it.  Accordingly, Black Elk's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 18.

**9.  Job 24, EI 118 #2**

Montco pleads that Black Elk supplied drawings for Job 24, EI 118 #2 that represented the intermediate casing of the well as "cemented to the surface."  (ECF No. 158 at 54). However, Montco claims that it discovered gas pressure on the intermediate casing string.  (ECF No. 158 at 54).  Further, Montco asserts that there was no cement at all behind the intermediate casing.  (ECF No. 158 at 54).  Montco maintains that this alleged misrepresentation dramatically increased the cost of plugging and abandoning the well.  (ECF No. 158 at 54).

Montco failed to plead its misrepresentation claim against Black Elk as to Job 24, EI 118 #2 with sufficient particularity as required under Rule 9(b).  Although Montco claims that Black Elk supplied it with drawings, it does not specify when or where this occurred.  Accordingly, Black Elk's Motion to Dismiss Count I of Montco's Second Amended Complaint is granted as to Job 18.

***Count II.  Breach of Contract Claim***

In Count II of its Second Amended Complaint, Montco alleges a breach of contract claim against Black Elk, claiming that: Black Elk materially breached the Black Elk Contract by providing false, misleading, and incomplete information regarding the Jobs, failing to pay

amounts due to Montco for completing the Jobs and work regarding wild wells, blowouts, uncontrolled flows, and hazardous materials and waste, and failing to demand payment from its Working Interest Parties, its Legacy Owners, and the issuers of bonds covering the plugging and abandonment work performed by Montco; Black Elk could not lawfully terminate the Black Elk Contract, or refuse to make payments under it because Black Elk had previously breached the contract and frustrated Montco's performance; and because Black Elk materially breached the Black Elk Contract, Montco is contractually permitted to collect the entire Turnkey Job Price and the prorated Incentive Fee pursuant to Sections 6.1 and 6.3 of the Black Elk Contract.  (ECF No. 158 at 86–91).

In its Motion to Dismiss, Black Elk argues that Montco failed to allege or prove that Black Elk received any funds from the sureties or that the applicable obligees for any bond or bonds associated with individual Jobs fully terminated or canceled such bonds without residual liability.  (ECF No. 162 at 2).  As to Montco's indemnification claims, Black Elk argues that the claims are barred by the plain language of the Black Elk Contract because it only agreed to indemnify Montco from third-party claims arising out of Montco's work regarding wild wells, blowouts, uncontrolled flow, and hazardous materials and waste, not for the work itself.  (ECF No. 162 at 2).  Lastly, Black Elk argues that Montco failed to prove that it terminated the Black Elk Contract and consequently cannot recover the Turnkey Job Price and Incentive Fee under Section 6.3 of the Contract.  (ECF No. 162 at 2).

To establish a breach of contract claim under Texas law, a plaintiff must prove that: (i) a valid contract existed between the plaintiff and the defendant; (ii) the plaintiff performed or was excused from doing so; (iii) the defendant breached the contract's terms; and (iv) the plaintiff sustained damages as a result of the defendant's breach.  *West v. Triple B Servs., LLP*, 264

S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.). If a plaintiff is required to perform under a contract before the defendant is obligated to perform, the plaintiff must prove that it satisfied every condition precedent before it may assert a claim for breach of contract against the defendant. *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010). "[A] contract may require performance by one party to be subject to the satisfaction of the other party, or a designated third party . . . ." *Tribble & Stephens Co. v. RGM Constructors, L.P.*, 154 S.W.3d 639, 652–53 (Tex. App.—Houston [14th Dist.] 2004), *opinion supplemented on overruling of reh'g*, (Feb. 10, 2005).

A. *Providing false, misleading, and incomplete information claim*

As one of several allegations, Montco claims that Black Elk breached the Black Elk Contract by providing false, misleading, and incomplete information regarding the covered Jobs. (ECF No. 158 at 86–91). Under Texas law, "courts interpreting unambiguous contracts are confined to the four corners of the document and cannot look to extrinsic evidence to create ambiguity." *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006).

The Black Elk Contract does not include any of the information that Montco alleges was false, misleading, and incomplete. Instead, Montco claims that Black Elk provided the false, misleading, and incomplete information during contract negotiations and in the bid packages. Black Elk thus could not have breached the Contract on these grounds because there is no provision in the Contract, and Montco points to none, that contained the purported false information that Black Elk could have breached. As such, Black Elk's Motion to Dismiss Count II of Montco's Second Amended Complaint is granted as to this claim.

*B.  Failure to pay for completed Jobs*

Montco next claims that Black Elk breached the Black Elk Contract by failing to pay for the Jobs completed pursuant to the Contract.  (ECF No. 158 at 86–91).  If a plaintiff is required to perform under a contract, then prior to the time the defendant is obligated to perform, the plaintiff must prove that it satisfied every condition precedent before it may assert a claim for breach of contract against the defendant.  *Solar Applications Eng'g, Inc.*, 327 S.W.3d at 108.

Pursuant to the Court's Dismissal Order dated October 3, 2017, this claim was dismissed because all conditions precedent necessary to payment were not met.  (ECF No. 146).  The Court found that every contractual condition for Montco's payment from Black Elk had not been satisfied because Black Elk's obligation to pay Montco for its services under the Black Elk Contract was conditioned upon the release of funds by the sureties, and no such release had occurred.  (ECF No. 146).  Accordingly, the Court held that Black Elk was excused from its obligation to pay Montco unless Montco carried its burden of proving that all conditions precedent necessary to give rise to a right to payment were met.  (ECF No. 146).

In its Second Amended Complaint, Montco fails to allege that the contractual conditions (the release of surety funds) for Montco to receive payment from Black Elk were satisfied. Black Elk's Motion to Dismiss Count II of Montco's Second Amended Complaint is accordingly granted as to the failure to pay claim.

*C.  Indemnity claims*

Montco next argues that Black Elk breached the Black Elk Contract by failing to indemnify it for services it performed to control wild wells, blowouts, and uncontrolled flows on a Black Elk Job site pursuant to Section 7.9.4 of the Contract.  (ECF No. 158 at 40–44, 86–91). Montco argues that Black Elk breached its contractual obligations under Section 7.9.8 of the

Black Elk Contract by failing to indemnify it for the cleaning and disposing of hazardous materials and waste. (ECF No. 158 at 40–44, 86–91).

In response to Montco's allegations, Black Elk argues that Montco's indemnity claims are barred by the plain language of the Black Elk Contract because it only agreed to indemnify Montco from third party claims arising out of Montco's work regarding wild wells, blowouts, uncontrolled flow, and hazardous materials and waste, not for the work itself, under Sections 7.9.4 and 7.9.8 of the Black Elk Contract. (ECF No. 162 at 2).

In its Memorandum Opinion dated October 3, 2017, the Court denied Black Elk's Motion to Dismiss Montco's Amended Complaint as to the indemnity claim. (ECF No. 146). The Court held that Montco's Amended Complaint raised its right to relief against Black Elk as to the indemnity claims beyond a speculative belief because the Amended Complaint included allegations that it performed services to control wild wells, blowouts, and uncontrolled flows on Job sites covered by the Black Elk Contract, as well as to deal with hazardous materials on such sites. (ECF No. 146). Montco pled the same factual allegations to support its indemnity claim in its Second Amended Complaint.

For the same reasons as stated in the Court's Dismissal Order dated October 3, 2017, Black Elk's Motion to Dismiss Count II of Montco's Second Amended Complaint is denied as to the indemnity claims because Montco stated a plausible breach of contract claim.

*D. Failure to pay the Turnkey Job Price and Incentive Fee claim*

Lastly, Montco claims that it is permitted to collect the entire Turnkey Job Price and the prorated Incentive Fee pursuant to Sections 6.1 and 6.3 of the Black Elk Contract because Black Elk materially breached the Black Elk Contract. (ECF No. 158 at 90). Under Section 6.3, "[i]f [the] Contractor terminates all or part of a Job because of Company's uncured default,

Contractor shall receive (a) the Turnkey Job Price for such terminated Job, . . . and (b) the Incentive Fee."  (ECF No. 158, Ex. 1).  Section 6.1 provides a "Party may terminate [the contract] immediately for fraud . . . and in such case, the opportunity to cure shall not apply." (ECF No. 158, Ex. 1).  Under Section 16.1 of the Black Elk Contract, Montco is defined as "Contractor."  (ECF No. 158, Ex. 1).

Black Elk argues that Montco's breach of contract claim for the Turnkey Job Price and Incentive Fee is barred by the plain language of the Black Elk Contract because Montco did not terminate the Black Elk Contract as required under Section 6.3 of the Contract.  (ECF No. 162 at 25–26).

Section 6.3 of the Black Elk Contract required Montco to "terminate" the Contract in order to receive the Turnkey Job Price and Incentive Fee.  However, Montco only claims that the Black Elk trustee terminated the Black Elk Contract in its Second Amended Complaint.  (ECF No. 158 at 76).  Therefore, Black Elk cannot recover the Turnkey Job Price and Incentive Fee pursuant to the explicit language of the Black Elk Contract because Montco did not "terminate" the Contract.  Thus, Black Elk's Motion to Dismiss Count II of Montco's Second Amended Complaint is granted as to the turnkey job price and incentive fee claim because Montco did not state a plausible breach of contract claim.

***Count III.  Quantum Meruit – First and Second Amendments to the Black Elk Contract claim***

Montco argues that it performed work pursuant to the "unexecuted" First and Second Amendments to the Black Elk Contract that benefitted Black Elk.  (ECF No. 158 at 92–97). Montco claims that the Amendments never became effective because the parties thereto did not sign the Amendments, and Black Elk did not procure their signatures.  (ECF No. 158 at 92–97). Montco voluntarily dismissed Count III of its Second Amended Complaint pursuant to its

Motion to Dismiss filed on June 14, 2018.  (ECF No. 167).  The Court accordingly does not address this claim.

### Count VI.  Quantum Meruit – Additional Work claim

Under Count VI of the Second Amended Complaint, Montco alleges a claim of *quantum meruit* against Black Elk.  (ECF No. 158 at 98–105).  Montco specifically argues that it conferred a benefit upon Black Elk by performing additional, undisclosed work on Black Elk Job sites in order to properly decommission those sites.  (ECF No. 158 at 102).  Montco claims that it did not know, nor could it have known, about the unanticipated issues it discovered at the Black Elk Job Sites.  (ECF No. 158 at 99).  While completing this additional but unanticipated work, Montco states it provided daily reports on its work to Black Elk.  (ECF No. 158 at 101). Ultimately, Black Elk accepted the benefits of Montco's unanticipated work on the Job sites but failed to compensate Montco for its work.  (ECF No. 158 at 103).  As such, Montco claims Black Elk was unjustly enriched to its detriment.  (ECF No. 158 at 96).

Black Elk moves to dismiss Count IV primarily on the ground that it is barred by *res judicata.*  Black Elk claims that Count IV of Montco's Second Amended Complaint is identical to Count IV of Montco's Amended Complaint, which the Court dismissed pursuant to its Dismissal Order dated October 3, 2017.  (ECF No. 147).

The doctrine of the law of the case "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).  The doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided."  *Id.* at 817.

Here, Montco pled an identical *quantum meruit* claim in its Second Amended Complaint as that which the Court dismissed pursuant to its October 3, 2017 Memorandum Opinion and

Dismissal Order.   Because the Court previously dismissed the *quantum meruit* claim, that decision governs this Motion and prevents Montco from repleading its *quantum meruit* claim without the Court's original ruling being reconsidered.   Accordingly, Count IV of Montco's Second Amended Complaint is dismissed.

**Conclusion**

The Court will issue an Order consistent with this Memorandum Opinion.

SIGNED **October 31, 2018.**

Marvin Isgur

UNITED STATES BANKRUPTCY JUDGE